UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BETH ANN HARTZBURG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:09-cv-975-WTL-DML |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ENTRY ON JUDICIAL REVIEW

Pursuant to 42 U.S.C. § 405(g), Plaintiff Beth Ann Hartzburg seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). For the reasons set forth below, the Court **AFFIRMS** the Commissioner's ruling.

## PROCEDURAL HISTORY

Hartzburg initially applied for DIB in June 2004, alleging that she became disabled on June 2, 2002. An administrative law judge ("ALJ") issued a decision on January 26, 2006, denying her application; that decision was upheld by the Appeals Council on January 11, 2208.

Hartzburg filed a new application for DIB on May 2, 2006, again alleging that she became disabled on June 2, 2002, due to fibromyalgia, depression, allergies, sinusitis, GERD, TMJ, insomnia, immune system compromised, irritable bowel syndrome, polyps, migraines, and restless leg syndrome. After her application was denied initially and upon reconsideration, she requested and was granted a hearing before an ALJ. A hearing was held in November 2008 before ALJ S.N. Willett, at which the Plaintiff was represented by counsel. The ALJ heard

testimony from the Plaintiff and a vocational expert. In a decision dated January 21, 2009, the ALJ denied Hartzburg's application for benefits. After the Appeals Council denied review of the ALJ's decision on June 15, 2009, Hartzburg filed this timely appeal.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## THE ALJ'S DECISION

The ALJ found that, pursuant to the doctrine of res judicata, the January 26, 2006, decision denying Hartzburg's prior application for DIB was final and binding and established that Hartzburg was not disabled as defined by the Act as of that date. Accordingly, the issue before the ALJ was whether Hartzburg was disabled as of January 27, 2006. Hartzburg does not appeal this finding.

Applying the five-step analysis, the ALJ found at step one that Hartzburg had not engaged in substantial employment since January 27, 2006. At steps two and three, the ALJ concluded that Hartzburg had the severe impairments of status post carpal tunnel syndrome release-right, fibromyalgia, hypoxia, and headaches, but that those impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Hartzburg retained the residual functional capacity ("RFC") to perform light work with certain limitations.

Specifically, he found that she could lift and/or carry up to ten pounds frequently and up to twenty pounds occasionally and that she could stand and/or walk for a total of six hours in an eight-hour work day and sit for a total of about six hours in an eight-hour work day. Her ability to push and/or pull was unlimited, but she was limited to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling and frequently reaching, handling and fingering. In addition, she should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. The ALJ found that given Hartzburg's RFC she was not able to return to her past relevant work as a binder or child care worker. However, considering her age, education, work experience, and RFC, she was capable of performing a significant number of other jobs in the national economy, including companion, security monitor, stock clerk, and telemarketer. Therefore, the ALJ determined at step five that Hartzburg was not disabled.

## DISCUSSION

Hartzburg's brief contains a thorough and accurate summary of the medical evidence of record, which are incorporated herein.

Hartzburg argues that the ALJ erred in his evaluation of her psychological impairments and their effect on her ability to work. The ALJ found that Hartzburg did not have a severe mental impairment, but rather suffered only from "dysthymia of mild severity." Hartzburg argues that in so finding the ALJ ignored evidence to the contrary. The only evidence Hartzburg points to is a March 13, 2006, assessment by psychiatrist Mark Ogle, who diagnosed Hartzburg with dysthymia and somatizing and histrionic personality traits and assessed her with a Global Assessment of Function ("GAF") score of 45 which does, indeed, suggest the presence of serious symptoms. The ALJ did not ignore this evaluation as suggested by Hartzburg, however. Rather,

4

he fully acknowledged it and simply found that the GAF score of 45 was inconsistent with the remaining evidence of record, including a June 2006 consultative exam in which her GAF was rated as 52, indicating only moderate symptoms, and the fact that she had not pursued any further psychiatric treatment and there was no other evidence in the record that would support a finding that she had a severe psychological impairment. The ALJ adequately explained his finding with regard to Hartzburg's psychological condition, and his determination that she did not suffer from a severe mental impairment is supported by substantial evidence of record, namely the June 2006 consultative examination.

Hartzburg also argues that the ALJ erred because he did not "allow [her] to discuss limitations caused by her somatization and histrionic traits in the 'B' criteria." This argument is based upon the following exchange between Hartzburg's attorney and the ALJ during the hearing:

> ALJ: All right. Now I have a question for you that relates to the somatization and histrionic traits. In her disability analysis that we are to consider functional limitations that arise from mentally determinable impairments, and we are also to consider the impact symptomatology; however, her SSR [INAUDIBLE] we do not consider traits, characteristics or other matters personal to an individual. So I want you to be aware that when you get into this notion of the personality traits, cluster B, all of that, then you're – you know, we get into an issue where it become almost a question of how that person is made. So I'm more interested in symptomatic things versus that types of analysis because I think that might not aid her. . . . If she's, you know, borderline personality, if she's a hysterical personality or something then it is–it becomes how she's formed not a disorder that causes particular manifestations which are symptoms. So it's the trait problem I'm having some difficulty with. . . .
>
> Attorney: But I understand we do have personality disorders are considered in the mental health – in the mental impairment listing as a separate disorder.

5

| | | |
|---|---|---|
| ALJ: | | Oh, I'm not saying they're not there. What I'm telling you is that it's only the symptoms and functional limitations that are considered in relation to how the condition and the severity and impact on work capability. |
| Attorney: | | Understood, Your Honor. |

Record at 25-26. The Court does not believe that this exchange evidences any inherent flaw in the ALJ's treatment of mental impairments. Further, Hartzburg does not point to any evidence that she was prohibited (or even discouraged) from introducing in light of this exchange. Accordingly, Hartzburg has not demonstrated any error on the part of the ALJ with regard to her mental impairments.

Hartzburg also argues that the ALJ erred in his evaluation of the effects of her physical impairments on her ability to work. First, Hartzburg points to the fact that the ALJ noted that her daily activities are limited because of her pain and fatigue, but argues that he did not consider these limitations in assessing her RFC. However, the ALJ's RFC determination of light work with some additional restrictions is not inconsistent with his finding regarding her daily activities–that she could "essentially perform a wide range of tasks without assistance."

The remainder of Hartzburg's arguments relate to whether the ALJ improperly rejected Hartzburg's allegation of disabling pain. With regard to subjective symptoms such as pain, where, as here, a claimant has a medically determinable impairment that is reasonably expected to produce the symptoms alleged, the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of those symptoms. Because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, an ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility

must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)). Further, the regulations provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2).

Applying this standard to this case, the Court finds that the ALJ's credibility determination must be upheld. While the ALJ did note, as Hartzburg points out, that there were no clinical or objective medical findings that supported the extent of the symptoms alleged by Hartzburg, her credibility determination was not solely based on that fact. Rather, the ALJ also noted that Hartzburg had made some exaggerated claims to her treating physicians, had exhibited less than maximum effort during a consultative examination, had exhibited fingering ability in the examination that was inconsistent with her testimony at the hearing, and wore braces on her hands despite the fact that no doctor had prescribed them. The ALJ felt that all of these things called Hartzburg's credibility into question, a conclusion that is not patently wrong.

The ALJ also noted that Hartzburg had sought limited medical treatment in 2006 and 2007 and that she had not tried treatments such as "physical therapy, a TENS unit, massage, acupuncture, steroid injections or any other pain treatment used typically for significant arthritis or fibromyalgia." Record at 15. Hartzburg, citing SSR 96-7p, argues that it was improper for the ALJ to consider her lack of treatment because it was due to lack of financial means. However, there is no evidence of record to support the fact that Hartzburg's failure to seek

treatment was due to her financial situation.  Hartzburg also takes issue with the ALJ's observation that she had not seen her rheumatologist for treatment of her fibromyalgia since 2006, arguing that this fact is irrelevant in light of the fact that she was being treated by a neurologist.  The Court agrees with Hartzburg that the ALJ's finding in this regard is erroneous; the record is clear that Hartzburg's neurologist sent her to the rheumatologist for a second opinion regarding the best way to treat her fibromyalgia; the rheumatologist provided that opinion but noted that she did not plan to see Hartzburg again, presumably in light of her ongoing treatment by the neurologist.  However, in light of the numerous other reasons given by the ALJ for her credibility determination, this error is harmless and does not require remand.

Finally, Hartzburg argues that the ALJ failed to consider the combined effect of her mental and physical impairments, and particularly the effect of her "somatization and histrionic traits" on her perception of pain and other symptoms.  In this case the record contains one notation by a psychiatrist that Hartzburg has somatizing and histrionic personality traits, but nothing other than her counsel's argument on appeal to suggest that those personality traits have any effect on her RFC.  Accordingly, Hartzburg has not demonstrated that the ALJ's failure to address them was error.

## **CONCLUSION**

As set forth above, the ALJ in this case satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 09/23/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification